2024 IL App (1st) 221455

FIRST DISTRICT,
FIRST DIVISION
February 13, 2024

No. 1-22-1455

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 92 CR 19294 |
| CALVIN SMITH, a/k/a Sam Hewitt, | ) ) ) | Honorable Michael B. McHale, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1     In 1992, defendant Calvin Smith (also known as Sam Hewitt) pled guilty to two counts of unlawful use of a weapon (UUW) (720 ILCS 5/24-1(a)(7) (West 1992)) for possessing a shotgun with a barrel length of less than 18 inches and an overall length of less than 26 inches (a short-barreled shotgun). Defendant was initially sentenced to 18 months' probation and was subsequently sentenced to 3 years' imprisonment for violating his probation.

¶ 2     On June 23, 2022, defendant filed a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)), seeking to vacate his UUW conviction as a violation of his second amendment rights. Defendant appeals the circuit court's dismissal of his petition, arguing that the UUW statute prohibiting possession of short-barreled firearms violates the second amendment under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022). For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4         On August 25, 1992, defendant was charged with two counts of UUW for knowingly possessing a shotgun with a barrel length of less than 18 inches and an overall length of less than 26 inches. Ill. Rev. Stat. 1989, ch. 38, ¶ 24-1(a)(7) (now codified at 720 ILCS 5/24-1(a)(7)(ii) (West 2022)). On September 11, 1992, defendant pled guilty to both counts and was sentenced to 18 months' probation. He then violated his probation by committing a drug offense (case No. 93-CR-13081). On July 1, 1993, defendant pled guilty to the drug offense and to violating his probation. He was sentenced to concurrent terms of three years' imprisonment for each offense.[1]

¶ 5         On June 23, 2022, defendant filed a section 2-1401 petition for relief from judgment, arguing that his UUW conviction should be vacated because the "UUW statute [was] struck down as facially unconstitutional on Second Amendment grounds" in *People v. Aguilar*, 2013 IL 112116. On August 12, 2022, the circuit court dismissed defendant's petition, finding that his reliance on *Aguilar* is "misplaced as it does not apply to the specific facts of his case," where he was convicted of possessing "a 'sawed off' shotgun." Defendant now appeals.[2]

¶ 6                                                    II. ANALYSIS

¶ 7         Section 2-1401 of the Code provides a comprehensive statutory procedure by which final judgments may be vacated more than 30 days after their entry. 735 ILCS 5/2-1401(a) (West 2022); *People v. Vincent*, 226 Ill. 2d 1, 7 (2007). Ordinarily, a section 2-1401 petition must be

---

[1]Defendant was convicted of first degree murder and attempt first degree murder in case No. 94-CR-14946 and is currently serving a natural life sentence. See *People v. Hewitt*, 295 Ill. App. 3d 1110 (1998) (table) (unpublished order under Illinois Supreme Court Rule 23).

[2]Defendant mailed his notice of appeal on September 8, 2022, but it was not filed until September 15, 2022. On June 28, 2023, defendant filed a motion for supervisory order, requesting that the court treat his notice of appeal as timely filed. On July 13, 2023, our supreme court granted the motion and directed this court to "treat the notice of appeal *** as a properly perfected appeal from the circuit court's August 12, 2022, order."

filed within two years of a final judgment. 735 ILCS 5/2-1401(c) (West 2022). However, a petition can be brought at any time where, as here, a defendant alleges that his conviction or sentence "is based on a statute that is facially unconstitutional and void *ab initio*." *People v. Stoecker*, 2020 IL 124807, ¶ 28. "We review *de novo* a section 2-1401 petition that was denied or dismissed on legal grounds." *People v. Abdullah*, 2019 IL 123492, ¶ 13. We "may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct." *People v. Daniel*, 2013 IL App (1st) 111876, ¶ 37.

¶ 8        Defendant argues that the UUW statute's "flat-out ban on private residents from merely possessing short-barreled firearms" is facially unconstitutional under the second amendment. Section 24-1(a)(7)(ii) of the Criminal Code of 2012 provides that a person commits UUW if he knowingly

> "[s]ells, manufacturers, purchases, possesses or carries *** any rifle having one or more barrels less than 16 inches in length or a shotgun having one or more barrels less than 18 inches in length or any weapon made from a rifle or shotgun, *** if such a weapon as modified has an overall length of less than 26 inches." 720 ILCS 5/24-1(a)(7)(ii) (West 2022).

¶ 9        " 'Constitutional challenges carry the heavy burden of successfully rebutting the strong judicial presumption that statutes are constitutional.' " *People v. Rizzo*, 2016 IL 118599, ¶ 23 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 90). "That presumption applies with equal force to legislative enactments that declare and define conduct constituting a crime and determine the penalties imposed for such conduct." *Id.* The challenger has the burden of clearly demonstrating a constitutional violation. *People v. Greco*, 204 Ill. 2d 400, 406 (2003). "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount," as "[a] statute is facially

unconstitutional only if there are no circumstances in which the statute could be validly applied." *People v. Davis*, 2014 IL 115595, ¶ 25. The constitutionality of a statute is a question of law, which is reviewed *de novo*. *Id.* ¶ 26.

¶ 10    The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "Throughout the twentieth century[,] the prevailing understanding of the second amendment, at least in some way, related to militia service." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 66. This changed after *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), where the Supreme Court held that the second amendment confers an "individual right to keep and bear arms" for self-defense. Specifically, the "the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2122. This individual right to keep and bear arms was extended to the States under the fourteenth amendment in *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

¶ 11    After *Heller* and *McDonald*, the lower courts developed a "two-step" approach to assess second amendment claims. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2174. First, the government could justify its regulation by " 'establish[ing] that the challenged law regulates activity falling outside the scope of the right as originally understood.' " *Id.* at ___, 142 S. Ct. at 2126 (quoting *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)). If the regulated conduct fell beyond the amendment's original scope, then the analysis stopped there, and the regulated activity was " 'categorically unprotected.' " *Id.* at ___, 142 S. Ct. at 2126 (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)). However, "[i]f history proved inconclusive or suggested that the regulated activity was not 'categorically unprotected' courts proceeded to the second step, whereupon they conducted a means-ends analysis, employing either strict or intermediate

scrutiny and weighing the severity of the regulation against the ends the government sought to achieve." *Brooks*, 2023 IL App (1st) 200435, ¶ 67 (citing *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023)).

¶ 12    Recently, in *Bruen*, the Court condemned the application of any "means-end scrutiny" in the second amendment context. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2127. There, the Court struck a New York licensing regime requiring persons wishing to carry a firearm outside the home to show "proper cause" to be issued a license, meaning, a "special need for self-protection distinguishable from that of the general community." (Internal quotation marks omitted.) *Id.* at ___, 142 S. Ct. at 2123, 2156. In doing so, the Court adopted a new framework for evaluating second amendment claims, instructing, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at ___, 142 S. Ct. at 2126, 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.* at ___, 142 S. Ct. at 2130 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50, n. 10 (1961)).

¶ 13    Under *Bruen*, we first must determine whether the plain text of the second amendment covers the conduct at issue here, *i.e.*, whether the second amendment protects an individual's right to possess short-barreled firearms. See *id.* at ___, 142 S. Ct. at 2129-30. Defendant argues that the second amendment "presumptively protects Americans' rights to possess 'all instruments that constitute bearable arms ***,' " which includes short-barreled firearms. The State responds that because short-barreled firearms are "dangerous and unusual" weapons that are "not

commonly used by law-abiding citizens for self-defense purposes," they are not "arms" protected by the second amendment.

¶ 14    The Supreme Court has recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* In *Heller*, the Court recognized an "important limitation on the right to keep and carry arms," based on the nature of the arms. *Id.* at 627. Specifically, the "sorts of weapons protected [by the second amendment are] those in common use at the time," which is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." (Internal quotation marks omitted.) *Id.*

¶ 15    In considering what types of weapons are covered by the second amendment, the *Heller* Court examined its decision in *United States v. Miller*, 307 U.S. 174 (1939). See *Heller*, 554 U.S. at 624. In *Miller*, the Court held that the second amendment did not guarantee the right to keep and bear short-barreled shotguns "[i]n the absence of any evidence tending to show that possession or use of a [short-barreled shotgun] *** at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia." *Miller*, 307 U.S. at 178.

¶ 16    The *Heller* Court "read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*." (Emphasis added.) *Heller*, 554 U.S at 623, 625. This necessarily precludes defendant's argument that he has a second amendment right to possess a short-barreled shotgun. And to the extent that defendant challenges the UUW statute's prohibition on possessing both short-barreled shotguns *and* short-barreled rifles, he has offered "no meaningful

distinction between the two." See *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (taking its "cue from *Heller*" and "conclud[ing] that the possession of short-barreled rifles falls outside the Second Amendment's guarantee"). Accordingly, the plain text of the second amendment does not encompass an individual's right to possess short-barreled firearms. See *Heller*, 554 U.S at 625; see also *People v. Ramirez*, 2023 IL 128123, ¶ 27 (finding that defaced firearms "are not covered by the plain text of the second amendment because they are not typically used by law-abiding citizens for lawful purposes").

¶ 17        Defendant argues that we should not rely on *Heller*'s pronouncement that short-barreled shotguns are not protected by the second amendment because *Heller* did not involve "any historical analysis *** as to short-barreled firearms," as is now required under *Bruen*. We disagree. The *Heller* Court found that limiting the kinds of weapons protected by the second amendment is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." (Internal quotation marks omitted.) *Heller*, 554 U.S. at 627. *Heller* is entirely consistent with *Bruen*. See *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2126 ("In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."); see also *id.* at ___, 142 S. Ct. at 2157 (Alito, J., concurring) (noting that the Court had not "disturbed anything that [they] said in *Heller* or *McDonald* *** about restrictions that may be imposed on the possession or carrying of guns").

¶ 18        Defendant further asserts that short-barreled firearms are in "common use today" because 162,267 short-barreled shotguns and 532,725 short-barreled rifles were registered in the United

States as of 2021.[3] However, unlike handguns, short-barreled firearms are not "an entire class of 'arms' *** chosen by American society for [the] lawful purpose" of self-defense. See *Heller* 554 U.S. at 625, 628. Short-barreled firearms are regulated precisely because they are "concealable weapon[s] *** likely to be used for criminal purposes." See *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992) (explaining that short-barreled rifles are regulated under the National Firearms Act (26 U.S.C. §§ 5841, 5845 (2018)) for this very reason). The sheer number of registered short-barreled firearms does not undercut their dangerousness or the fact that they are "not typically possessed by law-abiding citizens for lawful purposes."[4] See *Heller*, 554 U.S. at 625, 628; see also *People v. Dean*, 207 Ill. App. 3d 640, 642 (1990) (noting that the UUW statute "provides that a person in possession of a sawed-off shotgun *** has committed a crime. No exceptions are allowed under this section because such weapons are considered to be inherently dangerous to human life").

¶ 19    Accordingly, defendant's facial challenge to section 24-1(a)(7)(ii) fails where he has not established that there are "no set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

¶ 20                          III. CONCLUSION

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

---

[3]Defendant cites to Alcohol, Tobacco, Firearms and Explosives, *Firearms Commerce in the United States*, at 16 (2021 Update), https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download [https://perma.cc/R7WD-VNDZ], United States Department of Justice Bureau of Alcohol, Tobacco, Firearms and Explosives, in support of these statistics.

[4]Since *Bruen*, numerous federal district courts have held that because short-barreled shotguns and rifles are dangerous and unusual weapons, their possession is not conduct protected under the second amendment. See, *e.g.*, *United States v. Wuchter*, No. 23-CR-2024-CJW-MAR, 2023 WL 4999862, at *5 (N.D. Iowa Aug. 4, 2023); *United States v. Saleem*, 659 F. Supp. 3d 683, 692 (W.D.N.C. 2023); *United States v. Brooks*, No. 23-26-DLB-CJS, 2023 WL 6880419, at *4 (E.D. Ky. Oct. 18, 2023); *United States v. Rush*, No. 22-cr-40008-JPG, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023); *United States v. Royce*, No. 1:22-cr-130, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023).

¶ 22   Affirmed.

*People v. Smith*, 2024 IL App (1st) 221455

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 92-CR-19294; the Hon. Michael B. McHale, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Christofer R. Bendik, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Su Wang, and Caitlin Chenus, Assistant State's Attorneys, of counsel), for the People. |