2024 IL App (1st) 230968-U

No. 1-23-0968

Order filed July 8, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 3622 |
| | ) | |
| DASHAWN CARLDWELL, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for unlawful use or possession of a weapon by a felon (UUWF) over his claim that the UUWF statute is facially unconstitutional under the second amendment.

¶ 2    Following a bench trial, defendant Dashawn Carldwell was convicted of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to 4½ years' imprisonment. On appeal, he argues the UUWF statute under which he was convicted (720 ILCS 5/24-1.1(a) (West 2022))

is facially unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II). For the following reasons, we affirm.

¶ 3    Defendant was charged by indictment with, *inter alia*, UUWF based on knowingly possessing a firearm after having previously been convicted of a felony.

¶ 4    At trial, Chicago police officer Isaiah Perez testified that, around 10:49 p.m. on March 7, 2022, he and two partners responded to a vehicle accident at the intersection of Division Street and Cicero Avenue, in Chicago. He observed a crashed van at the north end of the intersection. As the officers spoke to an occupant of the van, a woman approached and indicated that another vehicle that had been involved in the accident was further north on Cicero. The officers drove north on Cicero and Perez observed a crashed, unoccupied vehicle. A man approached and told the officers that the person from that vehicle had run north on Cicero and then west on Potomac Avenue.

¶ 5    The officers drove to that area and Perez observed a man running north in an alley, "about a street and a half" away from them. The officers drove into the alley and closed the distance. When the officers were 100 to 300 feet from the man, he turned west into another alley. From 100 to 150 feet, Perez observed a dark, L-shaped object in the man's hands that Perez believed was a firearm. The man tossed the object over a fence. He continued running down the alley a short distance, then stopped and raised his hands. The officers exited their vehicle and detained him. Perez identified him in court as defendant. Officers ultimately recovered a loaded, black 9-

millimeter pistol from a backyard where Perez believed defendant had tossed the firearm. The State published footage from Perez's body-worn camera and he narrated the events depicted.[1]

¶ 6    The State entered stipulations that defendant had not been issued a valid firearm owner's identification card (FOID card) or concealed carry license (CCL), and he had previously been convicted of a felony.

¶ 7    Following argument, the court found defendant guilty. The court denied defendant's motion for a new trial. Following a hearing, the court sentenced defendant to 4½ years' imprisonment. The court denied defendant's motion to reconsider the sentence.

¶ 8    On appeal, defendant argues that, in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the UUWF statute under which he was convicted is facially unconstitutional under the second amendment to the United States Constitution (U.S. Const., amend. II).

¶ 9    Whether a statute is constitutional is a question of law we review *de novo*. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9 (citing *People v. Davis*, 2014 IL 115595, ¶ 26).

¶ 10    Section 24-1.1(a) of the Criminal Code of 2012 provides:

"(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of [the Criminal Code of 2012] or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction. This

---

[1] The record on appeal does not include the correct video. Regardless, the video would have no effect on our disposition of this appeal as defendant's lone argument is that the statute under which he was convicted is facially unconstitutional, an issue for which "[t]he particular facts related to the challenging party are irrelevant." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

Section shall not apply if the person has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act." 720 ILCS 5/24-1.1(a) (West 2022).

¶ 11 Defendant argues that the statute is unconstitutional under the second amendment on its face. Facial challenges are "the most difficult challenge to mount." *Davis*, 2014 IL 115595, ¶ 25. Statutes are presumed constitutional, and to rebut that presumption and show a statute is facially unconstitutional, a party must establish that there are no circumstances under which the statute could be validly applied. *People v. Bochenek*, 2021 IL 125889, ¶ 10. "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Id.* A defendant may challenge the constitutionality of a statute at any time, even for the first time on appeal. See *People v. Gunn*, 2023 IL App (1st) 221032, ¶ 8.

¶ 12 The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, in which it stated that the second amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In 2010, the Court extended the right to keep and bear arms to the states under the fourteenth amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). The Court reiterated that its decision in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 13    Following *Heller* and *McDonald*, courts developed a two-step test for evaluating second amendment challenges to firearm regulations. See *Smith*, 2024 IL App (1st) 221455, ¶ 11. The first step was considering whether the regulated activity fell within the scope of the second amendment as it was originally understood. *Id.* If the government did not show the regulated activity was outside the scope of the second amendment, the second step was conducting a "means-end analysis." (Internal quotation marks omitted.) *Id.* In that analysis, courts weighed the severity of the regulation against the ends the government sought to achieve in enacting the regulation. *Id.*

¶ 14    However, in 2022 the Supreme Court issued *Bruen*, in which it announced a new analytical framework for evaluating the constitutionality of firearm regulations. *Id.* ¶ 12 (citing *Bruen*, 597 U.S. at 17, 24). The Court condemned the means-end analysis. *Id.* (citing *Bruen*, 597 U.S. at 19). Rather, under *Bruen*, where the second amendment's plain text covers an individual's conduct, the conduct is presumptively protected. *Id.* (citing *Bruen*, 597 U.S. at 17, 24). To justify the regulation of that conduct, the government must then demonstrate the regulation " 'is consistent with the Nation's historical tradition of firearm regulation.' " *Id.* (quoting *Bruen*, 597 U.S. at 24). To do so, the government must point to historical precedent, focusing on what the founders understood the second amendment to mean. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 70 (citing *Bruen*, 597 U.S. at 27, 34-35).

¶ 15    Initially, the State responds that in this case we need not reach the analytical framework that *Bruen* provided. The State notes that *Bruen* concerned a portion of a New York statute that only issued licenses to carry a firearm outside one's home or place of business to those who showed that "proper cause" existed. *Bruen*, 597 U.S. at 11-13. The Court differentiated such a "may-issue" licensing regime from states that had "shall-issue" licensing regimes, in which the state issues a

license whenever the applicant meets certain, objective requirements. *Id.* at 38 n. 9. *Bruen* noted that nothing in its decision "should be interpreted to suggest the unconstitutionality" of any "shall-issue" licensing regime. *Id.*

¶ 16    Following *Bruen*, in *Gunn*, we rejected an argument that the aggravated unlawful use of a weapon statute (720 ILCS 5/24-1.6(a) (West 2020)) was facially unconstitutional because it criminalized possessing a firearm if the possessor was in noncompliance with the Firearm Owners Identification Card Act (430 ILCS 65/1 *et seq.* (West 2020)) or Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.* (West 2020)). *Gunn*, 2023 IL App (1st) 221032, ¶¶ 7, 19, 29-30. We found in *Gunn* that those acts were "shall-issue" licensing programs of the type that *Bruen* had approved, and the aggravated unlawful use of a weapon statute was therefore not unconstitutional for criminalizing the possession of a firearm by a person in noncompliance with the acts. *Id.* ¶¶ 14-30.

¶ 17    The State notes that those acts prohibit those who have been convicted of a felony from obtaining a FOID card or CCL. 430 ILCS 65/8(c) (West Supp. 2021); 430 ILCS 66/25(2) (West 2022). The State maintains that we may therefore reject defendant's facial challenge to the UUWF statute without reaching any of the analytical steps provided by *Bruen* as, like those acts, the UUWF statute prevents felons from carrying firearms. Although we recognize that the UUWF statute provides that it does not apply if a felon "has been granted relief by the Director of the Illinois State Police" pursuant to the Firearm Owners Identification Card Act (720 ILCS 5/24-1.1(a) (West 2022)), we are not convinced that *Gunn* and *Bruen*'s discussion of licensing schemes should control here. See *Brooks*, 2023 IL App (1st) 200435, ¶ 79 n. 11 (rejecting State's request to find *Bruen* inapplicable to similar statute based on *Bruen*'s endorsement of shall-issue licensing

regimes). In any case, the outcome of this appeal would not differ, as the UUWF statute is constitutional under *Bruen*'s analytical framework.

¶ 18    Thus, we turn to the analysis provided by *Bruen*. Again, the first question under *Bruen* is whether the second amendment's plain text covers the conduct at issue. *Bruen*, 597 U.S. at 24. If it does, the second question is whether the government has demonstrated that the regulation comports with our national historical tradition of firearm regulation. *Id.*

¶ 19    Here, defendant claims that the conduct prohibited by the UUWF statute, possessing a firearm, is covered by the plain text of the second amendment and therefore presumptively protected. We disagree. *Bruen* did not provide that the second amendment granted an unrestricted right to carry firearms. Rather, it explained that:

> "The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. [Citation.] Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Id.* at 70.

¶ 20    In *Heller*, *McDonald*, and *Bruen*, the Supreme Court established that the second amendment protects the rights of "law-abiding citizens." See *Bruen*, 597 U.S. at 8-10 (agreeing that "law-abiding citizens" have a right to carry handguns for self-defense outside the home); see also *Heller*, 554 U.S. at 635 (second amendment elevated "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home" (emphasis added)); *McDonald*, 561 U.S. at 786 (reiterating that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons" (internal quotation marks omitted)).

¶ 21     In two recent cases we rejected as-applied constitutional challenges to the UUWF statute on that basis, concluding that *Bruen* did not apply to laws that attempted to regulate firearm possession by felons. See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (noting that the justices in the *Bruen* majority repeated the phrase "law-abiding" 18 times in their majority opinion and concurrences); *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-28 (agreeing with *Baker* and noting that *Heller* suggested that felons did not maintain second amendment rights). As we held that the UUWF statute could be validly applied to the defendants in *Baker* and *Mobley*, defendant's facial challenge to the statute must fail. See *Bochenek*, 2021 IL 125889, ¶ 10 (a statute is only facially unconstitutional if there are no circumstances under which it could be validly applied); see also *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 18-22 (following *Baker* to reject facial challenge to UUWF statute).

¶ 22     Defendant requests we depart from our holdings in *Baker* and *Mobley* and instead follow the reasoning in *Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89, which found that under the first step of the two-part *Bruen* analysis, the second amendment protects the conduct of possessing a firearm, regardless of the possessor's felon status. See *id*. at 89 (reasoning that the first step under *Bruen* "does not contemplate the actor or the subject" and so "the defendant's status as a felon is irrelevant at this stage of the analysis.") We decline defendant's invitation to follow *Brooks* with respect to the first part of the *Bruen* analysis. That said, even were we to depart from the holdings in *Baker* and *Mobley*, we would still find defendant's facial challenge unavailing under the next step of *Bruen*'s analytical framework, as there is sufficient historical precedent to ban felons from possessing firearms.

¶ 23    Another district of this court recently considered and rejected a defendant's facial challenge to the UUWF statute under the second step of the *Bruen* analysis. *People v. Travis*, 2024 IL App (3d) 230113. In *Travis*, the court reiterated that the Supreme Court in *Heller* and *Bruen* explained "the right to bear arms has never been unlimited," but " '[t]hroughout modern Anglo-American history,' " had been " 'subject to well-defined restrictions.' " *Id.* ¶ 27 (quoting *Bruen*, 597 U.S. at 38). Further, although felons were not broadly prohibited from possessing firearms until the twentieth century, "such laws evolved from preexisting prohibitions restricting access to firearms," including by certain groups of people. *Id.* ¶¶ 28-29. In colonial America, for example, legislatures " 'disarm[ed] individuals whose status indicated that they could not be trusted to obey the law.' " *Id.* ¶¶ 30-31 (quoting *Brooks*, 2023 IL App (1st) 200435, ¶ 94). In *Travis*, the court therefore concluded that, under *Bruen*, there was sufficient historical precedent to make the UUWF statute facially constitutional, which it also noted had almost no effect on any law-abiding citizen's right to armed self-defense. *Id.* ¶¶ 32-33.

¶ 24    We also find instruction in *Brooks*, in which we rejected an as-applied constitutional challenge under *Bruen* to the armed habitual criminal statute (720 ILCS 5/24-1.7 (West 2016) (criminalizing possession of firearms after twice being convicted of certain felonies)). *Brooks*, 2023 IL App (1st) 200435, ¶ 55. Although *Brooks* concluded (under the first step of *Bruen* analysis) that the second amendment encompassed the conduct at issue, this court proceeded to find (under the second step of the *Bruen* analysis) that there was ample historical support for the legislature's ability to prohibit possession of firearms by twice-convicted felons. *Id.* ¶¶ 90-105. The historical analogues included "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id.* ¶ 96. *Brooks* recognized a "historical tradition of legislatures

exercising their discretion to impose status-based restrictions disarming entire categories of persons" and that "the founders understood that felons were one such group." (Internal quotation marks and citations omitted.) *Id.* ¶ 97.

¶ 25    Defendant acknowledges our conclusion in *Brooks* but contends that portion of the decision is wrongly decided.[2] We decline to revisit *Brooks* here. Rather, we will follow *Baker*, *Mobley*, *Burns*, and *Travis*, and reject defendant's facial challenge to the UUWF statute under the second amendment. As defendant has not shown that the UUWF statute is unconstitutional, we affirm his conviction.

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27    Affirmed.

---

[2] Defendant does not discuss *Travis*, which was decided on April 19, 2024, after defendant filed his initial brief and the State filed its response brief, but before defendant filed his reply brief on May 2, 2024.