2024 IL App (1st) 230606-U

FIFTH DIVISION
September 13, 2024

No. 1-23-0606

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 7288 |
| | ) | |
| MONTRICE AVERY, | ) | Honorable |
| | ) | Steven G. Watkins, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Mitchell and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court judgment is affirmed where (1) defendant's as-applied constitutional challenge is forfeited, and (2) the unlawful use or possession of a weapon by a felon statute is not unconstitutional on its face.

¶ 2    Following a jury trial, defendant Montrice Avery was found guilty of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to two years in prison. On appeal, Mr. Avery argues that his conviction is unconstitutional both facially and as applied to him under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Mr. Avery was charged by information with multiple offenses arising from his possession of a firearm on July 7, 2020. The State proceeded on one count of UUWF premised upon Mr. Avery having been previously convicted of felony escape in 2012.

¶ 5     At trial, Chicago police officer Michael Mendez testified that on July 7, 2020, he and his partner, Officer Edgar Escobar, responded to a call regarding "a person with a gun" near Central Avenue and West End Avenue in Chicago. When they arrived in the area in a marked squad vehicle, Officer Mendez saw Mr. Avery, whom he identified in court, walking northbound on Central Avenue. Mr. Avery "was manipulating" zippers on a bag on his chest. Officer Mendez ordered Mr. Avery to "keep his hands up," but Mr. Avery fled. Officers Mendez and Escobar pursued on foot and eventually, Officer Escobar "secure[d]" Mr. Avery.

¶ 6     The State introduced Officer Mendez's body camera footage, which is in the record on appeal and has been viewed by this court. In the footage, Officer Mendez chases Mr. Avery into a gangway. As Mr. Avery enters the gangway, a black handgun falls to the ground from his person.

¶ 7     Officer Escobar testified consistently with Officer Mendez regarding their encounter with Mr. Avery. The State introduced Officer Escobar's body camera footage, which depicted the same events.

¶ 8     Officer Gonzalez testified that he followed Officers Mendez and Escobar and saw a black handgun drop from "in front of" Mr. Avery. Officer Gonzalez recovered the firearm, which was loaded with a live round chambered.

¶ 9     The State entered a stipulation that Mr. Avery had a prior felony conviction. The State informed the judge that the conviction involved a 2012 escape from electronic monitoring, but the specific felony was not communicated to the jury.

¶ 10    The jury found Mr. Avery guilty of UUWF. The court denied Mr. Avery's motion and amended motion for a new trial.

¶ 11    Mr. Avery's presentence investigative report (PSI) listed nine prior convictions from 1998 through 2017, including seven convictions for possession of cannabis or other controlled substances, one for obstructing identification, and the stipulated escape from electronic monitoring. After a hearing, the court sentenced Mr. Avery to two years in prison.

¶ 12                                    II. JURISDICTION

¶ 13    Mr. Avery was sentenced on February 27, 2023, and timely filed his notice of appeal on March 28, 2023. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases.

¶ 14                                    III. ANALYSIS

¶ 15    On appeal, Mr. Avery argues that the UUWF statute is unconstitutional on its face under the second amendment to the United States Constitution because it does not comply with the framework established by the United States Supreme Court in *Bruen*. He also argues that the UUWF statute is unconstitutional as applied to him because his prior convictions do not establish that he was the type of "presently-dangerous individual" for whom the framers of the Constitution permitted disarmament.

¶ 16    Here, Mr. Avery was convicted of UUWF under section 24-1.1(a), which provides that "[i]t is unlawful for a person to knowingly possess on or about his person *** any firearm *** if the person has been convicted of a felony." 720 ILCS 5/24-1.1(a) (West 2020). Relevant here, Mr. Avery was convicted of felony escape from electronic monitoring in 2012.

¶ 17    The constitutionality of a statute is a matter of law, which we review *de novo*. *People v.*

- 3 -

*Ligon*, 2016 IL 118023, ¶ 11. In analyzing a challenge to the constitutionality of a statute, "we begin with the presumption that the statute is constitutional and that, if reasonably possible, this court must construe the statute so as to affirm its constitutionality and validity." *Id*.

¶ 18    A party raising a facial challenge to the constitutionality of a statute "faces a particularly heavy burden," because "[a] statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10. Therefore, a facial challenge fails if any situation exists where the statute could be validly applied. *People v. Davis*, 2014 IL 115595, ¶ 25. In contrast, an as-applied challenge "requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 19    The second amendment provides: "A well regulated Milita, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), holding that the second amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. The second amendment applies to the States through the fourteenth amendment of the United States Constitution. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

¶ 20    Under *Heller* and *McDonald*, courts developed a two-step test to assess second amendment challenges to firearm regulations. See *People v. Smith*, 2024 IL App (1st) 221455, ¶ 11. First, the government could justify the regulation by establishing whether the regulated activity fell outside the scope of the second amendment as it was originally understood. *Id*. If the conduct fell beyond the second amendment's original scope, it was "categorically unprotected." *Id*. Otherwise, the court would progress to the second step and conduct a "means-end analysis" where the court

weighed the severity of the regulation against the ends the government sought to achieve in enacting the regulation. *Id.*

¶ 21    In *Bruen*, the United States Supreme Court announced a new analytical framework for evaluating the constitutionality of firearm regulations under the second amendment. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 68 (citing *Bruen*, 597 U.S. at 17). Under *Bruen*, a court must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 597 U.S. at 24; *Brooks*, 2023 IL App (1st) 200435, ¶ 69. If it does, then the Constitution "presumptively protects that conduct" and the government must justify the regulation by showing that it is consistent with the nation's historical tradition of firearm regulation. *Bruen*, 597 U.S. at 24; *Brooks*, 2023 IL App (1st) 200435, ¶ 69. To make this showing, the government must point to historical precedent which establishes what the founders understood the second amendment to mean. *Bruen*, 597 U.S. at 24-25; *Brooks*, 2023 IL App (1st) 200435, ¶ 70.

¶ 22    As an initial matter, the State argues that Mr. Avery forfeited his as-applied constitutional challenge because he raises it for the first time on direct appeal. See *People v. Holman*, 2017 IL 120655, ¶ 32, *overruled on other grounds by People v. Wilson*, 2023 IL 127666) ("[A] defendant must present an as-applied constitutional challenge to the trial court in order to create a sufficiently developed record.").

¶ 23    We agree with the State, as the record is not sufficiently developed for us to review Mr. Avery's as-applied constitutional challenge. "[A]s-applied constitutional challenges are dependent on the specific facts and circumstances of the challenging party and, therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *People v. House*, 2021 IL 125124, ¶ 27. Here, Mr. Avery premises his as-applied challenge on the contention that the founders permitted

disarmament only for persons who were presently dangerous, not for persons who were mere felons. He argues his prior convictions do not establish he is the type of presently dangerous individual for whom the framers intended disarmament.

¶ 24    However, at trial, Mr. Avery stipulated to his felon status, so the trial court made no factual findings regarding his other prior convictions and how they related to his present as-applied claim. As such, Mr. Avery's as-applied constitutional challenge is premature. See *id*. ¶ 31 (finding the appellate court erred in ruling on an as-applied constitutional challenge without a developed evidentiary record or factual findings on the claim); *People v. Ivy*, 2023 IL App (4th) 220646-U, ¶ 18 ("Given the record is minimal concerning [the] defendant's prior felonies and this case is not an as-applied *** claim" involving sentencing under *Miller v. Alabama*, 567 U.S. 460 (2012), "we find [the] defendant's as-applied constitutional challenge premature."); see also Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2021) (unpublished orders entered on or after January 1, 2021, may be cited for persuasive purposes).

¶ 25    Regarding Mr. Avery's facial challenge, he has not established that the UUWF statute could not be validly applied to any defendant. This court has interpreted *Bruen* in the context of UUWF and has determined that *Bruen* does not apply to felons, because the holding was limited to laws affecting "law-abiding citizens." See *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 (rejecting the defendant's as-applied constitutional challenge to the UUWF statute); see also *People v. Mobley*, 2023 IL App (1st) 221264, ¶¶ 27-29 (same). As the UUWF statute could be validly applied to the defendants in *Baker* and *Mobley*, Mr. Avery's facial challenge to the statute must also fail. See *Bochenek*, 2021 IL 125889, ¶ 10 ("A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid."); see also *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 18-22 (rejecting the defendant's facial

challenge to the UUWF statute using the reasoning in *Baker*).

¶ 26    Mr. Avery requests we depart from our holdings in *Baker* and *Mobley*, and instead follow the reasoning in *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 89, where we found that a defendant's status as a felon is irrelevant under the first step of the *Bruen* analysis and "is more properly evaluated under the second step's historical tradition analysis." But even if we did follow *Brooks*, sufficient historical precedent exists to ban felons from possessing firearms. See *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 27-33 (finding that the UUWF statute was "consistent with this nation's history of preventing potentially dangerous individuals from exercising the right to bear arms," and so was facially constitutional).

¶ 27    After this appeal was fully briefed, we granted Mr. Avery's motion for leave to cite *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), as additional authority. The Supreme Court in *Rahimi* held that a federal statute prohibiting individuals subject to domestic violence restraining orders from possessing firearms was constitutional on its face because "the Second Amendment permits the disarmament of individuals who pose a credible threat to the physical safety of others." 602 U.S. at ___, 144 S. Ct. at 1898. The court in *Rahimi* rejected the government's interpretation that the defendant may be disarmed simply because he was not "responsible." *Id*. at ____, 144 S. Ct. at 1903.

¶ 28    Mr. Avery contends that *Rahimi* supports his contention that the UUWF statute was unconstitutional because its ban on firearm possession based on felon status, irrespective of contemporary dangerousness, is inconsistent with the second amendment regulatory tradition. He also contends that the nine Supreme Court justices rejected the argument that the second amendment applied only to "law-abiding, responsible" citizens, and this court therefore should reject the State's argument that the second amendment permits restrictions aimed at citizens who

are not " 'law-abiding and responsible,' " or who are not " 'virtuous.' "

¶ 29    Notwithstanding Mr. Avery's assertion to the contrary, *Rahimi* did not reject the view that the second amendment applies only to "law-abiding, responsible" citizens as Mr. Avery contends. It merely rejected the government's contention that a defendant may be disarmed simply because he was not "responsible," finding the word vague, and made no mention of the phrase "law-abiding" whatsoever. The only mention of "law-abiding" is in the *Rahimi* dissent, which uses the term in the context of setting forth the government's argument—"that the Court already held the Second Amendment protects only 'law-abiding, responsible citizens,' "—which the dissent found specious. See *id*. at ____, 144 S. Ct. at 1944.

¶ 30    Mr. Avery here was not merely "irresponsible," but had been previously convicted of a felony, and the *Rahimi* court confirmed that prohibitions on the possession of firearms by felons were "presumptively lawful." *Id*. at ____, 144 S. Ct. at 1902. "[W]e do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Id*. at ____, 144 S. Ct. at 1901. Accordingly, *Rahimi* supports our conclusion that the UUWF statute is constitutional on its face.

¶ 31                                IV. CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 33    Affirmed.