2025 IL App (1st) 231201-U

No. 1-23-1201

Order filed March 10, 2025

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 1253801 |
| | ) | |
| TAVION HODGES, | ) | Honorable |
| | ) | Laura Ayala-Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm defendant's conviction for unlawful use or possession of a weapon by a felon (UUWF) over his claim that the UUWF statute is facially unconstitutional under the Second Amendment.

¶ 2     Following a bench trial, defendant Tavion Hodges was found guilty of unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2020)) and sentenced to five years in prison. On appeal, defendant argues that the UUWF statute is facially unconstitutional as it violates the second amendment of the United States Constitution. We affirm.

¶ 3     We set forth only the facts necessary to understand the issue on appeal.

¶ 4     Defendant was charged with two counts of aggravated unlawful use of a weapon (AUUW) and one count of UUWF after attempting to flee a traffic stop. The State dismissed the AUUW counts prior to trial.

¶ 5     At trial, evidence established that officers curbed defendant's vehicle in Chicago on September 6, 2021. As officers removed defendant from the vehicle, they saw what appeared to be a handgun "falling from his person." A firearm was recovered between "defendant's leg and the ground." The arrest was filmed on the officers' body-worn cameras. Defendant had a prior felony conviction for aggravated robbery. Defendant testified that he did not possess or see the recovered firearm on or before September 6, 2021. Defendant did not know how the firearm ended up on the ground next to his leg, positing that officers could have "planted" it.

¶ 6     The trial court found defendant guilty. Defendant's motion for a new trial was denied and he was sentenced to five years in prison.

¶ 7     On appeal, defendant argues that, in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), the UUWF statute violates the second amendment of the United States Constitution on its face.

¶ 8     Whether a statute is constitutional is a question of law we review *de novo*. *People v. Smith*, 2024 IL App (1st) 221455, ¶ 9 (citing *People v. Davis*, 2014 IL 115595, ¶ 26).

¶ 9     The UUWF statute provides that it is a felony to "knowingly possess on or about [one's] person or on [one's] land or in [one's] own abode or fixed place of business any *** firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2020).

¶ 10    A facial challenge is "the most difficult challenge to mount." *People v. Davis*, 2014 IL 115595, ¶ 25. Statutes are presumed constitutional. *People v. Bochenek*, 2021 IL 125889, ¶ 10. To rebut that presumption and establish that a statute is facially unconstitutional, the party challenging the constitutionality must demonstrate that there are no circumstances under which the statute would be valid. *Id*. "If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *Id*.

¶ 11    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

¶ 12    In 2008, the United States Supreme Court issued its decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), in which it stated that the Second Amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635. The court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons *** or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 625-27.

¶ 13    In 2010, the Court extended the right to keep and bear arms to the states under the Second Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). The Court reiterated that its decision in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " *Id*. at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 14    In *Bruen*, the United States Supreme Court announced a new analytical framework for evaluating the constitutionality of firearm regulations. Under *Bruen*, if the Second Amendment's "plain text" covers an individual's conduct, the conduct is presumptively protected. *Bruen*, 597

U.S. at 24. To justify the regulation of that conduct, the government must then demonstrate that the regulation " 'is consistent with the Nation's historical tradition of firearm regulation.' " *People v. Smith*, 2024 IL App (1st) 221455, ¶ 12 (quoting *Bruen*, 597 U.S. at 24). To do so, the government must point to historical precedent, focusing on what the founders understood the Second Amendment to mean. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 70 (citing *Bruen*, 597 U.S. at 27, 34-35).

¶ 15    Here, defendant claims that the conduct prohibited by the UUWF statute is covered by the plain text of the Second Amendment and therefore is presumptively protected. We disagree. In *Bruen*, the Supreme Court reiterated that the Second Amendment does not grant an unrestricted right to carry firearms by all people at all times. Rather,

> "The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. *Heller*, 554 U.S. 570, 581 (2008). Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Bruen*, 597 U.S. at 70.

¶ 16    In *Heller* and *Bruen*, the Supreme Court expressly stated that the Second Amendment protects the rights of "law-abiding citizens." See *Bruen*, 597 U.S. at 8-10 (agreeing that "law-abiding citizens" have a right to carry handguns for self-defense outside the home); see also *Heller*, 554 U.S. at 635 (Second Amendment elevated "the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home" (emphasis added)).

¶ 17    Defendant requests we follow *Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89, which found that under the first step of the *Bruen* analysis, the Second Amendment protects the conduct of possessing a firearm, regardless of the possessor's felon status. See *id*. at 89 (reasoning that the first step under *Bruen* "does not contemplate the actor or the subject" and so "the defendant's status as a felon is irrelevant at this stage of the analysis."); but see, *e.g.*, *People v. Kelley*, 2024 IL App (1st) 230569, ¶ 22 (rejecting the defendant's facial challenge to the armed habitual criminal statute, stating that "*Bruen* is clear that second amendment rights apply to law-abiding citizens for self-defense").

¶ 18    Even if we presumed that a felon's firearm possession is covered under the "plain text" of the Second Amendment, however, defendant's challenge to the UUWF statute would fail under *Bruen's* second step. Under the second step of the *Bruen* analysis, *Brooks* found ample historical support for the legislature's ability to prohibit possession of firearms by twice-convicted felons. *Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105. The historical analysis included "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id*. ¶ 96. *Brooks* recognized a "historical tradition of legislatures exercising their discretion to impose status-based restrictions disarming entire categories of persons" and that "the founders understood that felons were one such group." (Internal quotation marks and citations omitted.) *Id*. ¶ 97.

¶ 19    Similarly, in *People v. Travis*, 2024 IL App (3d) 230113, the court reiterated that the Supreme Court in *Heller* and *Bruen* explained "the right to bear arms has never been unlimited," but " '[t]hroughout modern Anglo-American history,' " had been " 'subject to well-defined restrictions.' " *Id*. ¶ 27 (quoting *Bruen*, 597 U.S. at 38). Further, although felons were not broadly prohibited from possessing firearms until the twentieth century, "such laws evolved from

preexisting prohibitions restricting access to firearms," including by certain groups of people. *Id*. ¶¶ 28-29. In colonial America, for example, legislatures " 'disarm[ed] individuals whose status indicated that they could not be trusted to obey the law.' " *Id*. ¶¶ 30-31 (quoting *Brooks*, 2023 IL App (1st) 200435, ¶ 94). In *Travis*, the court therefore concluded that, under *Bruen*, there was sufficient historical precedent to make the UUWF statute facially constitutional, which it also noted had almost no effect on any law-abiding citizen's right to armed self-defense. *Id*. ¶¶ 32-33.

¶ 20    Defendant acknowledges our conclusion in *Brooks* but contends that portion of the decision was wrongly decided. We decline to revisit *Brooks* here and reject defendant's facial challenge to the UUWF statute under the Second Amendment.

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 22    Affirmed.