2024 IL App (1st) 221921-U

Nos. 1-22-1921 & 1-23-0620 (consolidated)

THIRD DIVISION
August 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 92 CR 19997, 95 CR |
| | ) | 28637 |
| JOSEPH LINZY, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | John F. Lyke, Jr. and |
| | ) | Michael J. Kane, |
| | ) | Judges, presiding. |

_____

JUSTICE D. B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the trial court's denial of defendant's petitions.

¶ 2    Defendant Joseph Linzy[1] appeals the trial court's denial of his petitions filed pursuant to

section 2-1401 of the Code of Civil Procedure (Code) 735 ILCS 5/2-1401 (West 2022).

_____

[1] Defendant's name is listed as "Joseph Linzy" in case number 1-22-1921, and "Joe Linzy" in case number 1-23-0620.

Nos. 1-22-1921 & 1-23-0620 (consolidated)

Defendant's petitions challenged his 1992 and 1995 convictions for unlawful use of a weapon by a felon (UUWF) as unconstitutional under the Second Amendment. On appeal, defendant contends that the trial court erred in denying his petitions because (1) the UUWF statute is unconstitutional on its face where there is no founding-era evidence that supports a permanent revocation of the right to keep and bear arms solely based on a person's status, and (2) the statute is unconstitutional as applied to him because the underlying felony he committed was a non-violent offense. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     Defendant pleaded guilty to UUWF in case number 92 CR 19997 on November 5, 1992. In that case, the State presented the following as the factual basis for defendant's guilty plea. On August 6, 1992, police officers went to defendant's residence while investigating a fatal shooting. There, they recovered a semiautomatic pistol under a mattress in a bedroom. Defendant told officers that he had been drinking and shooting the night before. He was with a person named "Tion," and Tion left the gun with defendant for safekeeping. The parties stipulated that defendant had received a three-year sentence in case number 90 CR 4379 for the manufacture and delivery of a controlled substance, a felony. After accepting defendant's plea, the trial court sentenced him to two years' imprisonment.

¶ 5     Defendant pleaded guilty to UUWF in case number 95 CR 28637 on January 4, 1996. The factual basis for defendant's plea indicated that police officers responded to a call about an armed man. At the location, they encountered defendant who was standing with a firearm. He told officers that he needed the weapon for protection. The State presented evidence that defendant had received three years of probation for a 1990 felony offense, three years' imprisonment in 1990 for the manufacture and delivery of a controlled substance, six months of conditional discharge in 1992

- 2 -

for a misdemeanor conviction, and two years' imprisonment for the 1992 UUWF conviction. After accepting defendant's plea, the trial court sentenced him to three years' imprisonment.

¶ 6     After defendant pleaded guilty in the 1995 case, he was charged with the murder of Doris Harris and concealment of a homicidal death. See *People v. Linzy*, 2024 IL App (1st) 220832-U, ¶ 3. After a jury trial, he was convicted of both offenses and sentenced to concurrent terms of 80 and 5 years in prison, respectively. *Id.* This court affirmed his convictions on direct appeal. *Id.* ¶ 34.

¶ 7     On September 2, 2022, defendant filed a section 2-1401 petition seeking relief from judgment in his 1995 UUWF case. In his petition, he alleged that, pursuant to *People v. Aguilar*, 2013 IL 112116, both his 1992 and 1995 UUWF convictions were unconstitutional and should be vacated. On September 12, 2022, while this petition was pending, defendant filed another section 2-1401 petition which sought relief from his UUWF conviction in the 1992 case. The second petition raised the same claim that the UUWF statute was unconstitutional under *Aguilar*.

¶ 8     On November 1, 2022, the trial court dismissed the second petition. The court found that *Aguilar* did not apply, and therefore defendant's 1992 conviction was constitutional. The court stated that it did not have jurisdiction to consider defendant's claim regarding his 1995 UUWF conviction because "section 2-1401 petitions must be filed in the same proceeding [in which] that judgment was entered." Defendant appealed the dismissal of his second petition.

¶ 9     Following the dismissal of defendant's petition in the 1992 case, the State filed a motion to dismiss his petition in the 1995 case. The State argued that the petition should be dismissed because 1) the trial court had already determined that defendant's UUWF conviction was constitutional, and 2) the petition was untimely. On February 24, 2023, the trial court dismissed

the petition and defendant appealed. Defendant's appeals in the 1992 and 1995 UUWF cases were consolidated into the instant appeal.

¶ 10                                    II. ANALYSIS

¶ 11     On appeal, defendant contends that the trial court erred in dismissing his section 2-1401 petitions. Section 2-1401 establishes a comprehensive, statutory procedure that allows for the vacatur of a final judgment more than 30 days after its entry. See 735 ILCS 5/2-1401 (West 2022). Section 2-1401 provides a civil remedy that extends to criminal cases as well as to civil cases. *People v. Sanchez*, 131 Ill.2d 417, 420 (1989). A 2-1401 petition may be dismissed if, taking its allegations as true, it does not state a meritorious defense. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). "Like a complaint, the petition may be challenged by a motion to dismiss for its failure to state a cause of action or if, on its face, it shows that the petitioner is not entitled to relief." *Klein v. La Salle National Bank*, 155 Ill.2d 201, 205 (1993). The trial court's dismissal of a section 2-1401 petition is reviewed *de novo*. *Vincent*, 226 Ill.2d at 18.

¶ 12     A section 2-1401 petition must be filed no later than two years after entry of the final order or judgment. 735 ILCS 5/2-1401(c) (West 2022). Our supreme court, however, recognized an exception to the two-year limitations period if the petition alleged a void judgment. *People v. Thompson*, 2015 IL 118151, ¶ 29. A void judgment may be challenged at any time, and such a challenge is not subject to forfeiture or other procedural restraints. *People v. Price*, 2016 IL 118613, ¶ 30. Relevant here, a judgment is deemed void *ab initio* when it is based on a statute that is facially unconstitutional. *Id*. "When a statute is declared facially unconstitutional and void *ab initio*, it means that the statute was constitutionally infirm from the moment of its enactment and, therefore, unenforceable." *Thompson*, 2015 IL 118151, ¶ 32.

¶ 13    Here, the State argues that defendant's petitions were properly dismissed because they were filed approximately 30 years after his convictions in the 1992 and 1995 cases. Defendant, however, argues that his convictions were based on the UUWF statute, which he alleges is unconstitutional on its face following the United States Supreme Court's ruling in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). A statute is void *ab initio* under a new constitutional rule if the new rule renders the statute facially unconstitutional. *Lucien v. Briley*, 213 Ill. 2d 340, 344 (2004). Void judgments may be challenged on collateral review for the first time on appeal. *People v. Hall*, 2014 IL App (1st) 122868, ¶ 8.

¶ 14    Moreover, defendant's claim challenges his conviction under what he alleges is a facially unconstitutional statute. His claim does not contradict the terms of his guilty plea. As such, his guilty plea does not serve as a bar to this appeal. *People v. Patterson*, 2018 IL App (1st) 160610, ¶¶ 20-21. Accordingly, we will consider defendant's claims.

¶ 15    Defendant contends that the UUWF statute is unconstitutional on its face where there is no founding-era evidence supporting a permanent revocation of the right to keep and bear arms based solely on a person's status. Rather, defendant argues, such evidence supports only bans based on a person's actual dangerousness or violent criminal history. Furthermore, these bans did not apply to all firearms at all times and could be removed if a person meets objective criteria. Defendant also argues that the UUWF statute is unconstitutional as applied to him, where the underlying felony for his UUWF conviction was a non-violent offense. Since there was no evidence at the time supporting his actual dangerousness, there was no historical basis for prohibiting his possession of a firearm.

¶ 16    Since the Supreme Court's decision in *Bruen*, there have been numerous challenges to the constitutionality of both federal and state statutes prohibiting felons from possessing firearms. See

*United States v. Calhoun*, 2024 WL 36977, *5 (noting the "flurry of filings across the country" challenging the federal statute); *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 79 (noting that "various jurisdictions have grappled with this issue"). However, there is a consensus among federal and state courts that such statutes are constitutional after *Bruen*. See *Calhoun*, 2024 WL 36977, *5 (finding that "the overwhelming majority of courts that have considered the issue" have concluded that the federal statute remains constitutional); *Brooks*, 2023 IL App (1st) 200435, ¶ 79 (finding that the "vast majority" of courts have determined that statutes prohibiting nonviolent felons from possessing weapons are constitutional under *Bruen*).

¶ 17    In *Brooks*, the defendant was convicted of being an armed habitual criminal under section 24-1.7 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/24-1.7 (West 2016)). *Id.* ¶ 1. The defendant was charged with the offense based on his knowing and intentional possession of a firearm after having been previously convicted of two qualifying felonies. *Id.* ¶ 3. His prior felony convictions included one for the manufacture or delivery of narcotics, and one for unlawful possession of a weapon by a felon. *Id.*

¶ 18    The defendant argued, for the first time on appeal, that under the new test established in *Bruen*, the armed habitual criminal statute violated the Second Amendment as applied to him. *Id.* ¶ 55. Although the State argued that the defendant forfeited the issue, the reviewing court considered the defendant's claim where the record below was sufficiently developed. ¶¶ 56, 60.

¶ 19    The court acknowledged that *Bruen* "announced a new analytical framework for evaluating the constitutionality of firearm regulations." *Id.* ¶ 68. In *Bruen*, the Supreme Court held that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's

historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. To meet this burden, the government must identify "historical precedent from before, during and even after the founding" that shows "a comparable tradition of regulation." *Id*. at 27.

¶ 20    The court in *Brooks* first considered whether the plain text of the Second Amendment covered the defendant's conduct. It noted that the defendant committed the armed habitual criminal offense by possessing a firearm after having been convicted of two qualifying offenses. *Brooks*, 2023 IL App (1st) 200435, ¶ 85. Since the plain language of the Second Amendment protects a person's right to keep and bear arms, the court found that the defendant's possession of a firearm was " 'presumptively constitutional.' " *Id*. ¶ 89, quoting *Bruen*, 597 U.S. at 17-18. The court noted that at this stage of the analysis, the defendant's status as a felon was "irrelevant." *Id.*

¶ 21    Instead, courts should consider the defendant's felon status when analyzing "the nation's historical tradition of firearm regulation." *Id*. ¶ 90. Upon a thorough review of the historical restrictions for possession of firearms, the *Brooks* court concluded that "such categorical restrictions [were] inextricably linked to the notion of 'law abiding citizens.' " *Id*. ¶ 92.

¶ 22    The court noted that "[r]estrictions on the possession of firearms date back to England in the 1600's when the government repeatedly disarmed individuals whose conduct reflected that they could not be trusted to abide by 'the sovereign and [his] dictates.' " *Id*. ¶ 93, quoting *Range v. Attorney General* 69 F.4th 96, 120 (3d Cir. 2023) (Krause, J., dissenting). In Colonial America, legislatures disarmed categories of individuals who were not trusted to obey the law, including Native Americans and Catholics. *Id*. ¶ 94.

¶ 23    Furthermore, punishments imposed in the Colonial period showed "the widespread acceptance of the legislatures' authority to disarm felons" for certain nonviolent crimes. *Id*. ¶ 96. Specifically, legislatures "prescribed death or forfeiture of a person's entire estate (presumably

including firearms) as punishment" for nonviolent crimes such as deceit, forgery, and the wrongful taking of property. *Id.*

¶ 24 Additionally, legislatures disarmed certain groups not because they were viewed as dangerous or violent, but because they were "presumed unwilling to obey the law." *Id.* ¶ 97. Felons were understood as one such group. *Id.* ¶ 97. Citing to scholarship on the Second Amendment, the *Brooks* court found that the "majority of legal historians" agreed that the right to bear arms "turn[s] on one's law-abiding character." *Id.* ¶ 98. The court found no historical requirement that an individual be deemed dangerous before prohibiting him or her from possessing a firearm. *Id.* ¶ 102.

¶ 25 The court held that the armed habitual criminal statute, which prohibits the possession of firearms by convicted felons, was "consistent with the national historical tradition of firearm regulation." *Id.* ¶ 105. Therefore, the statute was constitutional as applied to the defendant. *Id.*

¶ 26 We agree with the reasoning in *Brooks*. Although *Brooks* addressed the constitutionality of the armed habitual criminal statute, and the provision challenged here is the UUWF statute, the question of whether the Second Amendment allows legislatures to categorically ban non-violent convicted felons from possessing firearms is the same one defendant raises in this case.

¶ 27 Defendant argues, however, that we should not follow *Brooks* because that case cited laws that disarmed politically unpopular groups, including religious, racial, and political minorities, and thus should not be considered. He also contends that those historic laws sought to prevent insurrection, rebellion, resistance to westward expansion, or "pernicious animus," a purpose unlike that of the UUWF statute.

¶ 28 We find *Calhoun*, a recent Northern District of Illinois case, persuasive on these points. In *Calhoun*, the defendant challenged the analogous federal statute prohibiting felons from possessing firearms, 18 U.S.C.A. § 922(g)(1). *Calhoun*, 2024 WL 36977, *5. The court joined the

majority of courts in the district finding that § 922(g)(1) was constitutional on its face under *Bruen*'s analysis. *Id*. *6, 8.

¶ 29    The court acknowledged that historic laws disarming categories of people were enacted to prevent sedition and insurrection, but disagreed with the defendant that they were thus improper analogues to § 922(g)(1), which imposed "a blanket—and permanent—ban on people who have been convicted of a felony." *Id*. *11. The court reiterated that *Bruen* " 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.' " (Emphasis in the original.) *Id*. quoting *Bruen*, 597 U.S. at 30. Historical regulations included "extensive and exhaustive penalties for felonies [including] outright capital punishment and the forfeiture of all property***." *Id*. *14.

¶ 30    The court further found that the respective laws placed a comparable burden upon the right to bear arms. *Id*. *11. History indicated that certain offenders could obtain permission to possess firearms. *Id*. For example, Catholics were allowed to retain their arms if they swore an oath of allegiance. *Id*. Likewise, a convicted felon may regain his or her right to possess a firearm through expungement of his conviction or pardon. *Id.*

¶ 31    The court also found no historical basis for the individualized assessment of dangerousness before prohibiting a felon from possessing a firearm. *Id*. *15-16. Instead, historical analogues supported " 'legislative authority to disarm persons convicted of felonies, regardless of whether the conviction involved a use (or attempted use) of force.' " *Id*. *15, quoting *United States v. Phillips*, 2023 WL 9001124, *14. The district court therefore found § 922(g)(1) constitutional as applied to the defendant. *Id*. *16.

¶ 32    Here, defendant cites *Range*, in which the federal court held, contrary to the *Calhoun* court, that § 922(g)(1) was unconstitutional as applied to a defendant who committed a nonviolent felony.

We note that the judgment in *Range* has been vacated and the case "remanded to the United States Court of Appeals for the Third Circuit for further consideration in light of *United States v. Rahimi*, 602 U.S. __ (2024)." *Garland v. Range*, No. 23-374, 2024 WL 3259661 (U.S. July 2, 2024). Nonetheless, we choose to follow the "vast majority" of courts finding that statutes prohibiting nonviolent felons from possessing firearms are constitutional under *Bruen*. *Brooks*, 2023 IL App (1st) 200435, ¶ 79; see also *Calhoun*, 2024 WL 36977, *6 (disagreeing with cases finding such statutes unconstitutional and instead joining "the majority of courts in this District and across the nation" finding otherwise).

¶ 33   In summary, legislatures have historically banned categories of individuals, particularly felons, from possessing firearms based on a presumption of untrustworthiness or risk of danger. Moreover, prohibiting felons from possessing firearms is a comparable burden to punishments historically imposed upon those committing felonies. As was the case for certain groups dispossessed of firearms in the past, felons retain an opportunity to possess firearms under the UUWF statute. A convicted felon may possess a firearm if he or she "has been granted relief by the Director of the Illinois State Police under Section 10 of the Firearm Owners Identification Card Act." See 720 ILCS 5/24-1.1(a) (West 2022). Finally, courts have found no historical requirement that an individualized assessment of a felon's dangerousness be made before prohibiting him or her from possessing a firearm. For the reasons set forth in *Brooks* and *Calhoun*, we find that the UUWF statute is constitutional on its face and as applied to defendant in this case.

¶ 34                                        III. CONCLUSION

¶ 35   For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 36   Affirmed.