2025 IL App (1st) 230874-U

FIRST DISTRICT,
SIXTH DIVISION
June 6, 2025

No. 1-23-0874

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 21 CR 1137801 |
| | ) | |
| FELIPE AVALOS, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We affirm defendant's conviction for unlawful use or possession of a weapon by a felon (UUWF) where the evidence at trial was sufficient to support the jury's verdict, the circuit court did not commit plain error in violating rule governing *voir dire* examination, the circuit court did not violate defendant's right of confrontation, the prosecutor's comments were not improper, and defendant failed to demonstrate the UUWF statute is unconstitutional under the U.S. and Illinois Constitutions.

¶ 2     Following a jury trial, defendant Felipe Avalos was convicted of unlawful use or possession of a weapon by a felon (UUWF) and sentenced to six years' imprisonment. On appeal, Avalos contends: (1) the State failed to prove him guilty of UUWF; (2) the circuit court failed to comply with Illinois Supreme Court Rule 431(b)'s *voir dire* requirements; (3) the circuit court

deprived him of the right to confront witnesses by limiting his cross-examination of a witness and admitting the witness's prior inconsistent statement; (4) the State's comments in opening statement and closing argument amounted to prosecutorial misconduct; (5) the circuit court denied him a fair trial by restricting the jury's ability to take notes and ask questions; and (6) the UUWF statute violates the U.S. and Illinois Constitutions. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Jury Trial

¶ 5         On October 25, 2022, a jury found Avalos guilty of UUWF stemming from a call to the police made by Leticia Ortega who told them Avalos pointed a gun at her on July 3, 2021. Avalos and Ortega had a long-term dating relationship and lived together periodically for six years. On July 3, 2021, Ortega was having drinks at a friend's apartment near her own. Around 11:00 p.m., Ortega heard a "commotion" outside the building and looked out the window. She saw Avalos in a truck with two women and recognized one of the women as "Keisha." Avalos got out of the truck and yelled for Ortega to come outside, telling her, "Oh, all that tough talking you're doing, come outside." Ortega felt Avalos had "disrespected" her by bringing the two girls to her apartment, but she did not go outside or speak to them.

¶ 6         Ortega called the police after Avalos and the women left, and officers arrived approximately 15 minutes later. Ortega told the police officers Avalos had pointed a gun at her and gave them his license plate number. The police found Avalos and showed Ortega a gun they recovered. She told them it was the same gun Avalos pointed at her earlier that night. At trial, Ortega acknowledged telling this to police, but she recanted her statement by denying that Avalos pointed a gun at her and denying that the gun the police showed her on July 3 was Avalos's.

¶ 7         Chicago Police Officer Anthony Fosco testified that he was on patrol the night of July 3, 2021, when he received a call about a person with a gun around 11:00 p.m. Fosco drove to the

location with his partners and spoke to Ortega. She gave them Avalos's name, license plate number, and a description of his vehicle. The officers searched the area and observed Avalos's vehicle. Fosco activated his emergency lights to stop the vehicle, and a spotlight was pointed towards the rear of the truck. Fosco saw "the front passenger and the driver both moving towards the center console area and making a bunch of furtive movements by bending their upper torso" towards each other before returning to their seats.

¶ 8      Fosco approached the front passenger's side of the truck while one partner approached the driver's side. Avalos was in the front driver's seat with two other individuals in the vehicle. Fosco ordered the occupants out of the car. Fosco escorted the front seat passenger (Desiree) around the back of the truck towards the front of his police vehicle. At that point he observed "in plain view the handle of a handgun protruding from the left side of [Desiree's] bra." Video footage of the traffic stop corroborates Fosco's testimony.

¶ 9      Kiahna "Keisha" Rice testified on Avalos's behalf. She stated that the night of July 3, 2021, she and Desiree were with Avalos getting ready to go out downtown. Around 11:00 p.m., they stopped at Avalos's friend's house to pick up some money. When they arrived, all three got out of the vehicle and stood nearby. Rice testified Ortega was "screaming out the window" at Avalos. Ortega never left the house. Rice did not see Avalos with a gun. They got back into the car and drove off and were pulled over by police "a few blocks later." On cross-examination, Rice acknowledged she had spoken to Avalos "a couple times" since July 3, 2021, including talking about "coming in and testifying."

¶ 10      The parties stipulated Avalos "was previously convicted of a prior qualifying felony offense." Following closing arguments, the jury found Avalos guilty of UUWF. The circuit court denied Avalos's motion for a new trial. The circuit court originally sentenced Avalos to seven years' imprisonment. Upon Avalos's motion to reconsider sentence, the circuit court reduced his

sentence to six years' imprisonment. Avalos appeals.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, Avalos raises six issues, which we take in turn.

¶ 13                          A. Sufficiency of the Evidence

¶ 14        The first issue Avalos raises relates to the sufficiency of the evidence. To prove Avalos guilty of UUWF, the State had to prove beyond a reasonable doubt that Avalos knowingly possessed a firearm after being convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2018). Possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). Actual possession does not require present personal touching of the illicit material. *Id.* (citing *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000)). It may be proven by testimony that the defendant exercised some form of dominion over the firearm, such as that he had it on his person, tried to conceal it, or was seen to discard it. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27.

¶ 15        The rule that possession must be exclusive does not mean the possession may not be joint. *Schmalz,* 194 Ill.2d at 82; *People v. Embry,* 20 Ill. 2d 331, 335-36 (1960). If two or more individuals share the intention and power to exercise control, then each has possession. *Schmalz,* 194 Ill. 2d at 82. "[W]here possession has been shown, an inference of culpable knowledge can be drawn from the surrounding facts and circumstances." *Givens*, 237 Ill. 2d at 335. "Whether there is knowledge and whether there is possession or control are questions of fact to be determined by the trier of fact." *Schmalz*, 194 Ill. 2d at 81.

¶ 16        Avalos first argues the State did not prove him guilty of UUWF because it failed to show Avalos knowingly possessed a firearm. Avalos asserts that Ortega had "motive to falsely accuse" him of having a gun on July 3, but later recanted her accusation at trial, and no other evidence established possession.

¶ 17        In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). It is not the function of this court to retry Avalos or substitute our judgment for that of the jury on the weight given to the evidence or credibility of witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. This standard applies whether the evidence is direct or circumstantial, and circumstantial evidence alone may sustain a criminal conviction. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 18        Using this standard of review, we find the jury could reasonably have found Avalos had possession of the firearm and was guilty of UUWF beyond a reasonable doubt. The evidence established that Ortega looked out the window when Avalos arrived in the neighborhood, and Avalos flashed a gun at her and yelled at her to come outside. After Avalos and the women eventually left, Ortega called the police, told them what happened, and gave a description of Avalos and his truck. When the police pulled over Avalos's truck, Fosco saw "the front passenger [Desiree] and the driver [Avalos] both moving towards the center console area and making a bunch of furtive movements by bending their upper torso" towards each other before returning to their seats. Fosco escorted Desiree to the front of the police vehicle and, when she pulled her arm back, he noticed the handle of a gun sticking out from the side of her bra. Ortega subsequently identified the gun as the same gun Avalos pointed at her earlier that night. Viewed in the light most favorable to the prosecution, a reasonable trier of fact could find Avalos, a convicted felon prohibited from possessing a firearm, displayed a gun at Ortega, and when pulled over by police, hastily gave the gun to his front seat passenger or stuck it in her bra to get rid of it.

¶ 19        Avalos argues Ortega fabricated her statements to police the night of the incident and her

recantation at trial was more believable. He says she had motive to lie on July 3 because of her "long and tumultuous history" with Avalos and because she felt "disrespected" by Avalos showing up with two women. He fails to explain how or when this alleged motive to lie dissipated before she testified at trial, although Ortega admitted she "can't even keep count" of the number of times she had spoken to Avalos since July 3.

¶ 20     The jury was presented with this same argument at trial, and it was up to the jury, as the trier of fact, to resolve discrepancies in the testimony and evidence, assess the credibility of the witnesses, and determine the appropriate weight of the testimony. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). The jury was " 'free to accept or reject as much or as little of a witness's testimony as it please[d].' " *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67, quoting *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 22. Based on Ortega's initial statements to the police, and fact they pulled over Avalos only a few blocks away and found the gun sticking out of Desiree's bra, the jury could reasonably believe Ortega was more credible the night of the incident than she was at trial and, as a result, conclude that Avalos possessed a firearm on July 3.

¶ 21     Similarly, while Avalos argues Ortega's statement to the police was contradicted by Rice, the jury was in the best position to assess Rice's credibility and determine what, if any, weight to give her testimony. *Evans*, 209 Ill. 2d at 211. The jury was not required to give Rice's testimony any more weight than Fosco's testimony or believe her testimony given Ortega's initial statements to the police. Further, we need not "search out all possible explanations consistent with innocence." *People v. Wheeler*, 226 Ill. 2d 92, 117 (2007). Doing so would effectively amount to a prohibited retrial on appeal. *Id.* at 114, 117.

¶ 22     Avalos also asserts there was no "physical or forensic evidence" connecting him to the gun. This court has repeatedly found that where a witness's testimony is credible, the State is not required to present additional physical evidence to link a defendant to a firearm. *People v.*

*Campbell*, 2019 IL App (1st) 161640, ¶ 33. In this case, Ortega told police the night of the incident she saw Avalos with a gun. Fosco's observations of Avalos's behavior in the truck and subsequent recovery of the gun shortly thereafter lend credibility to Ortega's accusation made on July 3, even though she disclaimed it at trial. Under these circumstances, the State was not required to present any additional physical evidence to prove Avalos guilty.

¶ 23     We are not persuaded by Avalos's attempt to equate the facts of this case with those of *People v. Bailey*, 333 Ill. App. 3d 888 (2002*)*, *People v. Robinson*, 2024 IL App (1st) 230232-U, and *People v. Crumpton*, 2024 IL App (1st) 221651. In *Bailey*, a handgun was recovered from under the front passenger's seat where the defendant was riding, but it could not be seen until the police officer looked under the seat. *Bailey*, 333 Ill. App. 3d at 889-90. In *Robinson*, the defendant was charged with possessing drugs that were recovered from a pouch behind the driver's seat of a car in which he was a passenger, but a police officer acknowledged the defendant did not make any furtive movements in that direction. *Robinson*, 2024 IL App (1st) 230232-U, ¶¶ 2, 18. In *Crumpton*, a gun was recovered from underneath the front passenger's seat where the defendant was riding, but it could not be seen until the officer "pushed back" and looked under the seat. *Crumpton*, 2024 IL App (1st) 221651, ¶ 5. None of the defendants in these cases were observed handling the illicit items or making furtive movements towards the location where the items were eventually found. This critical fact distinguishes Avalos's case from theirs.

¶ 24     Moreover, the evidence in this case went beyond Avalos's "mere presence in a car." See *Bailey*, 333 Ill. App. 3d at 891. The gun was clearly visible in the body camera video haphazardly protruding from the left side of Desiree's shirt. The evidence supports the State's theory that Avalos gave Desiree the gun during the traffic stop to conceal it before the police could attribute it to him. See *Schmalz,* 194 Ill.2d at 82 (two or more individuals can each have possession). Based on the evidence, and knowing the jury heard and reconciled the testimony of Ortega, Fosco, and

Rice, we find no reason to disturb the guilty verdict.

¶ 25                    B. Illinois Supreme Court Rule 431(b)

¶ 26      Second, Avalos contends the circuit court erred when it failed to ascertain from potential jurors whether they "accepted" the principles of a fair trial set forth in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), which codifies our supreme court's decision in *People v. Zehr*, 103 Ill. 2d 472 (1984). We review the circuit court's compliance with Rule 431(b) *de novo. People v. Belknap*, 2014 IL 117094, ¶ 41.

¶ 27      As a threshold matter, Avalos did not object to the court's Rule 431(b) inquiries during *voir dire* or in the posttrial motion. A claim not raised by objection and preserved in a posttrial motion is forfeited, but we may still consider it if the error was clear or obvious and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice, or (2) the error was so serious that it alone affected the fairness of the proceedings. *People v. Mudd*, 2022 IL 126830, ¶¶ 21-22.

¶ 28      A violation of Rule 431(b) is not a second-prong, structural error that requires automatic reversal under a plain error analysis. See *People v. Birge*, 2021 IL 125644, ¶ 24. The first step of the plain error doctrine in a case involving a Rule 431(b) violation is to see if a clear and obvious error occurred and then decide the remaining portion of the first-prong analysis as to whether the evidence presented at trial was so closely balanced. Here, even if we were to find an error occurred, the evidence was not so closely balanced that any error was prejudicial.

¶ 29      "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. "A reviewing court's inquiry involves an assessment of the evidence on the elements of the charged offense or offenses, along with any evidence regarding the witnesses' credibility." *Id.* Where the parties' accounts are

both plausible and neither is corroborated by extrinsic evidence, the case is closely balanced. *Id.* ¶ 63; *People v. Naylor*, 229 Ill. 2d 584, 607-08 (2008).

¶ 30    Avalos argues the case amounts to nothing more than a "contest of credibility" between Ortega's original statement to police and her and Rice's trial testimony. Not so. Ortega's original statement to police on July 3 was corroborated by extrinsic evidence, including Fosco's observations and body camera footage. Fosco testified in detail about the flurry of movement by Avalos and his front seat passenger (Desiree) during the traffic stop, the immediate recovery of a handgun sticking out of Desiree's bra, and Ortega's confirmation that it was the same gun she saw Avalos with earlier. After undertaking a qualitative, commonsense assessment of the evidence, we find the corroborated evidence in this case strongly favored the State's allegations and was not closely balanced. As such, Avalos has not established reversible plain error to overcome the forfeiture of his Rule 431(b) claim.

¶ 31                                C. Right to Confront Witnesses

¶ 32    Third, Avalos argues he was denied his constitutional right to cross-examine a witness when the trial judge prevented him from eliciting evidence of Ortega's bias or motive. He further argues the circuit court violated his confrontation rights and 725 ILCS 5/115-10.1(b) when it admitted Ortega's prior inconsistent statement to police at trial.

¶ 33    Avalos forfeited these claims because he did not raise a sixth amendment objection at trial. Nor did he make an offer of proof as to what the requested cross-examination would have shown. Avalos acknowledges he failed to preserve his second claim, but argues he preserved his first claim by including it in a posttrial motion. Regardless, for the reasons set forth below, we find the circuit court committed no error in limiting cross-examination or admitting Ortega's prior statement to police.

¶ 34                                    1. Cross-Examination

¶ 35        A defendant has a federal and state constitutional right to confront witnesses against him. U.S. Const., amends. VI, XIV; Ill. Const.1970, art I, § 8. This right includes cross-examining witnesses to demonstrate any interest, bias, prejudice, or motive to testify falsely. *People v. Klepper*, 234 Ill. 2d 337, 355 (2009). Such cross-examination may concern any matter that goes to explain, modify, discredit, or destroy the testimony of the witness. *People v. Aughinbaugh*, 36 Ill. 2d 320, 325-26 (1967). The jury is entitled to the details of the theory of defense so it can make an informed judgment; thus, the right to cross-examine is satisfied when counsel is permitted to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318 (1974). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis in original.) *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).

¶ 36        While the right to cross-examination is not subject to the circuit court's discretion, the scope of cross-examination rests within the court's discretion. *People v. Nutall*, 312 Ill. App. 3d 620, 627 (2000). A circuit court "may impose limitations on a defense counsel's cross-examination into the potential bias of a prosecution witness without offending the defendant's sixth amendment right to confrontation." *People v. Pacheco*, 2023 IL 127535, ¶ 47. The circuit court has "wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or of little relevance." *Id.* The court may "impose certain restrictions on cross-examination so long as those restrictions serve 'legitimate interests in the criminal trial process [citation] and are not arbitrary or disproportionate to the purposes they are designed to serve.' " *Id.* (quoting *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir. 1992)).

¶ 37        To determine the constitutional sufficiency of cross-examination, we look not at what a defendant had been prohibited from doing, but what he or she had been allowed to do. *People v. Edwards*, 218 Ill. App. 3d 184, 194 (1991); *People v. Averhart*, 311 Ill. App. 3d 492, 499 (1999). "If the entire record indicates that the jury was made aware of adequate factors concerning relevant areas of impeachment of a witness, then no constitutional question arises merely because defendant was prohibited from pursuing another line of questioning." *Edwards*, 218 Ill. App. 3d at 194. Where there is no constitutional question, the circuit court's limitation of cross-examination is subject to review under the abuse of discretion standard. *People v. Wilson*, 2012 IL App (1st) 092910, ¶¶ 23-24.

¶ 38        Avalos's theory of defense at trial was that Ortega falsely accused him of carrying a gun on July 3, 2021, out of spite. He theorized that Ortega was upset with him for leaving their relationship for another woman and showing up near Ortega's apartment with two women. According to Avalos, Ortega fabricated her statement to police because she felt "disrespected" the night of July 3. A reading of the record shows Avalos was given ample opportunity to confront, cross-examine, and test the truth of Ortega's trial testimony and prior statement to police, which included her testimony regarding her tumultuous history with Avalos and her feelings the night of July 3. As such, Avalos was not denied his right to confront Ortega regarding his theory of defense.

¶ 39        While there is no scoreboard for the circuit court when ruling on objections, we note the circuit court sustained 19 of the State's objections to defense counsel's questions and overruled 11 objections. This reflects the circuit court's considered rulings upon the State's objection and undermines Avalos's claim his counsel's cross-examination was baselessly curtailed.

¶ 40        Counsel was permitted numerous inquiries into Ortega's alleged bias and motive for lying to police. Counsel asked Ortega: (1) whether Avalos was the father of her child; (2) whether she knew him because they lived in the same neighborhood and had the same friends; (3) how long

she and Avalos dated; (4) whether their relationship was exclusive; (5) whether she and Avalos lived together; (6) how long they lived together; (7) whether they fought; (8) whether Avalos disrespected her; (9) when their relationship ended; (10) whether Avalos moved out of their shared apartment and when; (11) whether Avalos visited her after he moved out; (12) whether Avalos spoke to her after he moved out; (13) whether she loved him at the time of trial; (14) whether she loved him in June 2021; (15) whether she loved him when they lived together; and (16) whether she knew who Avalos moved in with after he left her.

¶ 41          In comparison, Avalos complains of the circuit court's sustaining the State's objections to the following questions: (1) "Prior to Dunkin' Donuts, when was the last time you had a job?"; (2) "[W]hen you [and Avalos] lived together, who was paying the bills?"; (3) "Mr. Avalos disrespected you by bringing Keisha over to where you lived?"; (4) whether she had numerous tattoos referring to Avalos; (5) "[W]ho did [Mr. Avalos] move in with?"; and (6) "Have you tried to contact Keisha?" We fail to see how the excluded questions shed further light on Avalos's theory of defense without being repetitive or irrelevant to the 16 questions posited above. Instead, the record reflects the jury was "made aware of adequate factors concerning relevant areas of impeachment" (*Edwards*, 218 Ill. App. 3d at 194), and the circuit court did not abuse its discretion in limiting cross-examination "based on *** interrogation that [was] repetitive or of little relevance." *Pacheco*, 2023 IL 127535, ¶ 47.

¶ 42          Avalos cites *People v. Greer*, 293 Ill. App. 3d 861, 863 (1997), in support of his argument that his cross-examination was improperly curtailed. In *Greer*, testimony revealed the State provided financial assistance to move a witness from the neighborhood where a murder took place. *Id.* at 135. Finding the issue "collateral," the trial court stopped the defense from cross-examining the witness on "the depth of his financial distress and the extent of his desire to move from the neighborhood in which the crime occurred." *Id.* at 864. The defense unsuccessfully attempted to

elicit testimony to show the witness was biased toward the State because he had wanted to move for some time but could not do so for financial reasons, and he had not paid real estate taxes for two years. *Id.* On appeal, the reviewing court held the circuit court erred in disallowing cross-examination that would have allowed the defendant to develop a theory of impeachment—that "the help [the witness] received from the State was sufficient to induce him to implicate the defendant in the victim's death." *Id.* The court noted that evidence the witness was behind in his taxes and wanted to leave the neighborhood for years but had been unable to afford a move was not collateral to whether the witness would testify falsely to obtain help moving. *Id.*

¶ 43 Unlike in *Greer*, Ortega's alleged motive for falsifying her initial statement to police—that she was a jealous ex-girlfriend who felt disrespected when Avalos showed up with two women—was thoroughly brought out on direct and cross-examination. We disagree with Avalos that he was unable to explore the "the nature of her relationship with Mr. Avalos, her feelings toward him on July 3, and why she felt disrespected" and how it might have led to Ortega's statement to the police that night. Given the "wide latitude" the circuit court has in determining whether to admit testimony to prove bias and motive, we find the court did not abuse its discretion in refusing to allow certain testimony from Ortega. See *Pacheco*, 2023 IL 127535, ¶ 47.

¶ 44 2. Prior Inconsistent Statement

¶ 45 Avalos also argues the circuit court's admission of Ortega's prior inconsistent statement to police the night of the incident violated the Confrontation Clause and 725 ILCS 5/115-10.1. A prior statement is admissible as substantive evidence if it is inconsistent with the witness's trial testimony, the witness is subject to cross-examination about the statement, the statement narrates, describes, or explains an event or condition of which the witness had personal knowledge, and the witness acknowledged under oath the making of the statement. 725 ILCS 5/115-10.1 (West 2020).

¶ 46 Avalos does not dispute that the statement in question was inconsistent with Ortega's trial

testimony or that it narrates, describes, or explains an event of which Ortega had personal knowledge. Nor does Avalos dispute that Ortega acknowledged at trial telling the police on July 3 she saw Avalos with a gun and that the gun recovered was the one pointed at her. Instead, Avalos argues Ortega was not subject to cross-examination about the statement because of the circuit court's limitation on counsel's questioning of Ortega. We disagree.

¶ 47    Having found the circuit court did not err in limiting defense counsel's cross-examination of Ortega, we reject Avalos's contention that Ortega was not subject to cross-examination about her statement to police. "Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." *United States v. Owens*, 484 U.S. 554, 561 (1988). Ortega was on the stand, under oath, and answered questions posed to her. Ortega's prior statement was introduced during the State's direct examination. Defense counsel was provided with the full opportunity to cross-examine Ortega about the statement, though the record reflects counsel chose not to do so. *People v. Garcia-Cordova*, 2011 IL App (2d) 070550-B, ¶ 63 ("Where a defendant does not attempt to cross-examine a witness on her out-of-court statements, he cannot complain that the witness was unavailable for cross-examination."). See also *People v. Lewis*, 223 Ill. 2d 393, 405 (2006) (where a defendant does not attempt to cross-examine a witness on her out-of-court identification, he cannot claim on appeal he would not have been permitted to question her on that topic).

¶ 48    This distinguishes the facts of this case from *People v. Redd*, 135 Ill. 2d 252 (1990), which Avalos relies on in support of his argument. In *Redd*, the Illinois Supreme Court held a witness was not subject to cross-examination regarding his prior statement where he refused to answer questions on Fifth Amendment grounds, "neither admitted nor denied the content" of the prior statement, and "was not in a position where he [could] explain an earlier position and be cross-examined as to both his present and earlier positions." *Id.* at 308, 312. In contrast, Ortega did not

refuse to answer questions, admitted the content of her statement to police but said it was a lie, and was poised to explain her earlier statement but was never asked why she lied in the first place. Accordingly, we find no reversible error.

¶ 49                                        D. Prosecutorial Misconduct

¶ 50          Fourth, Avalos argues the State's opening statement and closing argument "improperly tilted the scales against him" by repeatedly referring to him as a "convicted felon." Avalos admits he failed to object to the prosecutor's remarks at trial but asks this court to excuse his forfeiture because he raised the issue in a post-trial motion or, alternatively, seeks review under the doctrine of plain error. In response, the State maintains there was no error where the prosecutor's comments were properly based on the evidence or reasonable inferences therefrom, and plain error does not apply. We agree.

¶ 51          A prosecutor has wide latitude in making opening statements and closing arguments and may comment on evidence and any fair and reasonable inferences the evidence may yield. *People v. Runge*, 234 Ill. 2d 68, 142 (2009); *People v. Jones*, 2016 IL App (1st) 141008, ¶ 21. Comments serving only to arouse the "prejudice and passion of the jury" are improper, and this court has "often decried the use of derogatory and pejorative terms used to describe the defendant." *Jones*, 2016 IL App (1st) 141008, ¶ 21. Reviewing courts are to consider the comments as a whole, rather than focusing on selected phrases or remarks, and will find reversible error "only if the defendant demonstrates that the improper remarks were so prejudicial that real justice was denied or that the verdict resulted from the error." *Runge*, 234 Ill. 2d at 142. The complained of remarks in this case fall short of that standard.

¶ 52          Avalos complains of the prosecutor's repeated reference to his status as a convicted felon. The State's opening statement began as follows:

          "On July 3rd of 2021, the defendant made the choice to have a gun. A gun that he could

not legally possess due to his felony criminal background. In fact, the defendant is forbidden from having a gun. He cannot own a gun, buy a gun, and he certainly cannot have a gun on the streets in the city of Chicago.

The law is clear and simple in the state of Illinois. Felons cannot possess guns and there are no exceptions. And yet despite this simple rule, the defendant had a gun."

The State's opening statement concluded:

"[A] convicted felon cannot possess a gun under the laws of the state of Illinois. At the end of the trial, my partner and I are going to ask that you hold the defendant responsible for possessing that gun and find him guilty of unlawful possession of a weapon by a felon."

¶ 53 In rebuttal closing argument, the prosecutor argued: "You heard through the stipulation that the defendant is a convicted felon."

¶ 54 Avalos was charged with UUWF, which required the State to prove he was convicted of a felony as an element of the offense. 720 ILCS 5/24-1.1(a) (West 2018). The evidence included the stipulated fact that Avalos was a convicted felon, which was admitted substantively. See *People v. Hester*, 271 Ill. App. 3d 954, 958 (1995) (where defendant's prior conviction was an element of the offense of UUWF, evidence of it was admitted substantively, and necessitated the jury's consideration of it). Accordingly, there was nothing wrong with the State referring to Avalos as a convicted felon—a stipulated fact—during its opening statement and closing argument. *People v. Rios*, 2022 IL App (1st) 171509, ¶ 96 (finding no error in prosecutor's reference to the defendant as a "multi-time convicted felon" where the parties stipulated that the defendant had two prior qualifying felony convictions). As a result, we reject Avalos's claim his trial counsel was ineffective for not objecting to the prosecutor's remarks, for "[i]t is axiomatic that a defense counsel will not be deemed ineffective for failing to make a futile objection." *People v. Holmes*, 397 Ill. App. 3d 737, 745 (2010).

¶ 55                                    E. Right to Fair Trial

¶ 56          Fifth, Avalos argues the circuit court deprived him of a fair trial where it did not explicitly instruct the jury they were allowed to take notes during Ortega's testimony and "discouraged the jury from asking questions" during deliberations. Avalos acknowledges he did not properly preserve the issue for review since he failed to contemporaneously object and include the claims in a post-trial motion but asserts his claims should be reviewed for plain error or ineffective assistance of counsel.

¶ 57          To make out a claim for ineffective assistance of counsel, Avalos must show defense counsel's performance fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result would have been different. *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). As for plain error, the first step is to determine whether an error occurred. See *People v. Walker*, 232 Ill. 2d 113, 124-25 (2009). If a clear and obvious error occurred, we may consider Avalos's unpreserved error only if he proves prejudicial error or that the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Avalos doesn't come close.

¶ 58                                    1. Jury Notetaking

¶ 59          Avalos argues the circuit court committed reversible error when it failed to instruct the jury that they could take notes until after Ortega's testimony in violation of section 115-4(n) of the Code. We find no error because the jury was not "prevented from taking notes" at any point during the trial.

¶ 60          Section 115-4(n) states: "The members of the jury shall be entitled to take notes during the trial, and the sheriff *** shall provide them with writing materials for this purpose. Such notes shall remain confidential, and shall be destroyed by the sheriff after the verdict has been returned

or a mistrial declared." 725 ILCS 5/115-4(n) (West 2018). While this statutory provision is mandatory (*People v. Strong*, 274 Ill. App. 3d 130, 135-37 (1995)), there is nothing affirmatively requiring the court to give such an instruction to the jury.

¶ 61    Nevertheless, after the first witness (Ortega) testified, the circuit court told the jury:

"Before we start with the next witness, I should have told you before. I forgot. Obviously you have notebooks for notes. You can take notes if you want to take them. If you want to take notes, put your name on the cover of the notebook. No one will see your notes at any time before the case is finished."

¶ 62    While the court may have initially "forgotten" to tell the jury about the protections afforded under section 115-4(n), it cured it promptly, right after Ortega testified. At no point did the court ever prevent the jury from taking notes, as was the case in *People v. Johnson*, 2019 IL App (3d) 150352-B, ¶ 18, *People v. Harris*, 2020 IL App (3d) 160169, ¶ 52, and *Strong*, 274 Ill. App. 3d at 135-37, which Avalos cites.

¶ 63    Avalos also argues the circuit court erred by saying: "No one will see your notes at any time before the case is finished." While the court did not track section 115-4(n) verbatim, its instruction adequately relayed the gist of the statute, which was that the notes would be confidential throughout the case.

¶ 64    The totality of the circumstances reveals that the jury was provided with writing materials from the start. The jury was informed about their ability to take notes and that their notes would remain confidential. No juror was denied the ability to take notes or led to believe they could not. No juror expressed confusion over Ortega's testimony or asked that it be replayed because they did not take notes. Although it is best practice for the circuit court to instruct the jury about notetaking at the beginning of trial, nothing in the record indicates the result of this trial would have been different had the circuit court recited verbatim section 115-4(n) before Ortega testified.

¶ 65                                            2. Jury Questions

¶ 66          Avalos argues the circuit court's "mechanical refusal to permit the jurors to seek clarification on the instructions, the evidence, or the procedure of the case" was error where it "discouraged jury questions regardless of content." This characterization is belied by the record.

¶ 67          Prior to jury deliberations, the circuit court instructed the jury, in relevant part:

> "While you're back there in the jury room, if you feel at some point that you need further instruction in some way or another, here's what you ought to do: You talk it over until you are sure the question you want asked is a question everybody wants asked, it's not that you want, this is what the jury needs. The person writes out the question and/or request for assistance, signs it, gives it over to the sheriff. It's brought out to me. I'll talk about it with the lawyers and see if we can answer the question for you. In which case I'll write the answer to the question on the form you sent it out to us.
>
> If you need to be brought back into court for some form of assistance or another, I'll bring you back into court. Having said that, however, I want to stress this point to you: I am not inviting correspondence from the jury. If you need to reach me, that's how you go about reaching me."

¶ 68          Jurors are entitled to have their inquiries answered. *People v. Childs*, 159 Ill. 2d 217, 228-29 (1994). "Generally, the trial court must instruct the jury if the jury has posed a question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002). The court may properly decline to answer a jury's question under numerous circumstances, including where "the instructions are readily understandable and sufficiently explain the law, where further instructions would serve no useful purpose or could mislead the jury, when the jury's inquiry involves a question of fact," and "if the answer could cause the court to express an opinion that might direct a verdict one way or

another." *Id*. In recognition of the trial court's discretion in managing the jury, we generally review the trial court's response to the jury for an abuse of discretion. *People v. Reid*, 136 Ill. 2d 27, 38 (1990).

¶ 69 Nothing in the circuit court's directions to the jury undermined its obligation to answer the jury's inquiries in this case. The court explained the procedure jurors were to follow before submitting questions. The court did not discourage the jury from asking any questions, as Avalos contends, but encouraged them to avoid asking unnecessary questions by conferring with each other before bringing them to the court's attention. This is in accordance with the well-established principle that, under the appropriate circumstances, a circuit court "may exercise its discretion to refrain from answering a jury's inquiries." *Reid*, 136 Ill. 3d at 39.

¶ 70                                  F. Constitutionality of the UUWF Statute

¶ 71 Finally, relying on *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Avalos argues the UUWF statute (720 ILCS 5/24-1.1(a) (West 2022)) is unconstitutional under the Second Amendment of the U.S. Constitution and Article I, Section 22 of the Illinois Constitution. We disagree.

¶ 72                                        1. Second Amendment Challenge

¶ 73 Avalos contends the UUWF statute is facially unconstitutional under the Second Amendment of the U.S. Constitution because it amounts to a permanent, status-based revocation of his right to keep and bear arms. He also claims the statute is unconstitutional as applied to him because the predicate offense used to establish his violation was a nonviolent offense and he was not under criminal sentence at the time of this offense.

¶ 74 The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States

Supreme Court stated that the Second Amendment elevated "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. The Court later extended the right to keep and bear arms to the states under the fourteenth amendment in *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In *McDonald*, the Court reiterated that its decision in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' " *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27).

¶ 75    In *Bruen*, the Supreme Court adopted a new analytical framework for evaluating the constitutionality of firearm regulations. *Bruen*, 597 U.S. at 17, 24. Under the *Bruen* test, when the Second Amendment's plain text covers an individual's conduct, the conduct is presumptively protected. *Id.* To justify the regulation of that conduct, the government must then demonstrate that the regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

¶ 76    Thus, pursuant to *Bruen*, a court must first consider whether the plain text of the Second Amendment covers the defendant's conduct. *People v. Boss*, 2025 IL App (1st) 221855, ¶ 27. If it does, the government must then point to historical precedent, focusing on what the founders understood the Second Amendment to mean. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 70 (citing *Bruen*, 597 U.S. at 27, 34-35).

¶ 77                            a. Facial Challenge

¶ 78    We first address, in short order, Avalos' argument that the UUWF statute is facially unconstitutional under the Second Amendment. It is not. We have repeatedly rejected the same argument Avalos presents here challenging the UUWF statute as facially unconstitutional under *Bruen*. See *People v. Burch*, 2025 IL App (1st) 231644-U; *People v. McGee*, 2025 IL App (1st) 231348-U; *People v. Hodges*, 2025 IL App (1st) 231201-U; *Boss*, 2025 IL App (1st) 221855; *People v. Johnson*, 2024 IL App (1st) 231155; *People v. Atkins*, 2024 IL App (1st) 221138-U; *People v. Benson*, 2024 IL App (1st) 221230-U; *People v. McKnight*, 2024 IL App (1st) 230571-

U; *People v. Avery*, 2024 IL App (1st) 230606-U; *People v. Linzy*, 2024 IL App (1st) 221921-U; *People v. Wright*, 2024 IL App (1st) 230428-U; *People v. Carldwell*, 2024 IL App (1st) 230968-U. In some of these cases, we concluded the term "the people" in the Second Amendment refers to law-abiding citizens, not felons. See, *e.g.*, *Burch*, 2025 IL App (1st) 231644-U, ¶ 14; *Boss*, 2025 IL App (1st) 221855, ¶¶ 30-33; *Atkins*, 2024 IL App (1st) 221138-U, ¶¶ 19-23. In others we found that, even assuming without deciding that the Second Amendment's protections apply to all people, the UUWF statute passes constitutional muster. See, *e.g.*, *McKnight*, 2024 IL App (1st) 230571, ¶¶ 32, 37.

¶ 79    Avalos does not dispute these holdings, but instead points us to *Brooks*, 2023 IL App (1st) 200435. *Brooks* does not help his case. In *Brooks*, we said a defendant's felon status was "irrelevant" during the first step of the *Bruen* analysis. But it is not irrelevant entirely. Under the second step of the *Bruen* analysis, *Brooks* found ample historical support for the legislature's ability to prohibit possession of firearms by convicted felons. *Brooks*, 2023 IL App (1st) 200435, ¶¶ 90-105. The historical analogues included "widespread acceptance of the legislatures' authority to disarm felons" during the founders' era. *Id.* ¶ 96. Consistent with *Brooks*, and the above-mentioned cases, we find the UUWF statute is constitutional under the Second Amendment.

¶ 80                              b. As-Applied Challenge

¶ 81    Avalos also argues the UUWF statute is unconstitutional as applied to him because "there are no historical regulations that would have applied to a person in his situation." However, Avalos forfeited this argument by not raising the issue below.

¶ 82    An as-applied challenge may not be raised for the first time on appeal because it depends on the particular facts and circumstances of the individual defendant. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37. Because the record has not been sufficiently developed in terms of

pertinent facts and circumstances surrounding his prior convictions and the danger he may pose, we cannot excuse Avalos's forfeiture. See *Thompson*, 2015 IL 118151, ¶ 36.

¶ 83                              2. Illinois Constitution Challenge

¶ 84        Avalos concedes his "substantive analysis" under the U.S. and Illinois Constitutions is "the same." Thus, his contention under Article I, Section 22 of the Illinois Constitution fails for the same reasons it fails under the Second Amendment of the U.S. Constitution.

¶ 85                              III. CONCLUSION

¶ 86        For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 87        Affirmed.